**In re COPLEY PHARMACEUTICAL, INC., "Albuterol" Products Liability Litigation.**

**MDL Docket No. 1013.**

United States District Court, D. Wyoming.

Oct. 28, 1994.

Stanley M. Chesley, Janet G. Abaray, Waite, Schneider, Bayless & Chesley, Cincinnati, OH, Paul Rheingold, Rheingold & McGowan, New York City, Donald S. Edgar, Edgar & Associates, Santa Rosa, CA, Robert B. Newman, Kircher, Robinson, Cook, Newman & Welch, Cincinnati, OH, Michael X. St. Martin, St. Martin, Lirette, Shea, Watkins & McNabb, Houma, LA, David J. Guin, Ritchie & Rediker, Birmingham, AL, J. Douglas McCalla, Spence, Moriarity & Schuster, Jackson, WY, for plaintiffs.

Daniel Lund, Montgomery, Barnett, Brown, Read, Hammond & Mintz L.L.P., New Orleans, LA, for vendors.

Wendell H. Gauthier, Gauthier & Murphy, Metairie, LA, Bruce A. Menk, Hall & Evans, Denver, CO, John Childers, Johnson & Bell, Chicago, IL, for defendants.

### *ORDER GRANTING PARTIAL CLASS CERTIFICATION*

BRIMMER, District Judge.

The above-entitled matter having come before the Court on the Plaintiffs' Motion for Class Certification pursuant to Federal Rule of Civil Procedure 23, and the Court having reviewed the materials on file herein both in support of and in opposition to, and having heard the oral arguments of the parties, and being fully advised in the premises, FINDS and ORDERS as follows:

## Background

The Defendant in this action, Copley Pharmaceuticals, Inc., is a generic drug manufacturer which produces and distributes Albuterol, a bronchodilator prescription pharmaceutical. The Defendant distributes Albuterol through interstate commerce for use by patients with various respiratory disorders. The subject of this litigation is four batches of Albuterol which became contaminated with a micro organism believed to be *pseudomonas fluorescens.* According to the Plaintiffs, this organism, or other contaminants, caused numerous injuries including bronchial infections, pneumonia, respiratory distress and, in some cases, death.

To comply with the Food and Drug Administration regulations of Albuterol, the Defendant tests each batch of its product for contaminants before distribution to the public. Defendant claims that it never found any sign of contamination until it began supplemental testing in December 1993. After several less drastic recalls and warnings, the Defendant issued a nationwide recall of Albuterol on January 5, 1994. This recall remains in effect.

Defendant's recall efforts were followed by the filing of numerous cases in state and federal courts throughout the country by plaintiffs claiming damages from the use of contaminated Albuterol. These cases ranged from relatively small actions with one or two plaintiffs to putative nationwide class actions representing all purchasers of Albuterol, injured or not. Currently, among the thirty cases before this Court eleven are putative class actions.

One of the class actions filed against Copley was that of Michelle Holmes and six other plaintiffs, brought in the United States District Court for the Southern District of Ohio. The *Holmes* class was defined as "all persons who inhaled Albuterol manufactured, distributed and/or manufactured by Copley Pharmaceuticals, Inc." It is this case that is before the Court as the putative class, with an amended class definition of "all persons who suffered damages as a result of the inhalation of Albuterol manufactured, supplied, distributed or placed in commerce by

Defendant." The Class Action Complaint is discussed more fully below.

Faced with a growing number of lawsuits filed throughout the country, the Defendant removed as many suits as possible to federal court and sought relief from the Judicial Panel for Multi–District Litigation, pursuant to 28 U.S.C. § 1407. Stay orders were entered in the federal cases and the MDL Panel heard the arguments of the Defendant on May 20, 1994. The MDL Panel consolidated the litigation before this Court and after an initial hearing on July 18, 1994, in Cheyenne, Wyoming, lead counsel and a plaintiffs' steering committee were chosen. It is this lead counsel who has requested class certification.

On August 25, 1994, the Plaintiffs filed their first Amended Class Action Complaint and Jury Demand with this Court. This "Master Complaint" lists seven plaintiffs, representing those who allege injury from Albuterol as well as the parents of allegedly injured plaintiffs and representatives of decedents. Plaintiffs' Master Complaint states six causes of action: (1) strict product liability, for both design and manufacturing defects, (2) negligence, (3) negligence per se, (4) breach of express and implied warranties, (5) fraud and punitive damages, and (6) a declaratory judgment ordering that epidemiological studies and medical monitoring be provided to the plaintiffs. As mentioned above, the Master Complaint narrowed the initial definition of the class to include only those who "suffered damages" from using Albuterol.

In its Answer, the Defendant admits that it initiated a nationwide recall of Albuterol, but denies any liability from the use of its product. Defendant also asserts numerous affirmative defenses to the Plaintiffs' claims, including: assumption of risk, contributory negligence, statute of limitations, misuse of product, failure to state a claim for which relief can be granted, preexisting conditions, disclaimer of warranties, that the Plaintiffs' claims for excessive fines violate Defendant's due process and others.

Although the Plaintiffs favoring class certification and the Defendant reasserted their arguments in the *Holmes* case, both parties have submitted further memoranda. Addi-

tionally, the Court has received and considered the arguments of two groups of plaintiffs who oppose class certification. On September 21, 1994, the Court heard oral arguments from the parties who had submitted briefs and other counsel with an interest in this litigation.

### Discussion

The Court has considered the arguments of the parties in interest to this litigation and the mandates of Rule 23. Deciding class certification at this time is difficult because this litigation is in its early stages with many key facts still undetermined. For example, the Plaintiffs favoring a class suggest that there may be as many as 176,000 potential plaintiffs, while the Defendant argues that the number will not exceed several hundred. Obviously, such a figure is important in deciding certification and difference of opinion of this issue makes a decision on class certification all the more complex.

Despite these complications, the Court is mandated by Rule 23(c)(1), to decide class certification "[a]s soon as is practicable." The Court also notes that class certification may be modified as time goes on, Rule 23(c)(1), and that under Rule 23(c)(4)(A), class certification may be granted for particular issues. Considering these factors, and those discussed below, the Court concludes that a plaintiffs' class should be certified for certain common issues.

### I.  The Existence of a Class.

Although the Court's analysis of class certification is governed by Rule 23, the Rule itself assumes the existence of a class to be represented. Therefore, the Court must make a preliminary determination on the existence of a class in this litigation. *Reed v. Bowen*, 849 F.2d 1307 (10th Cir.1988).

The Court concludes that the existence of some sort of class is one of the few straightforward issues before it. The common underlying facts establishing a class can be seen even without a consideration of the merits of the Plaintiffs' claims. It is undisputed that the Defendant's Albuterol was sold throughout the United States and that some, perhaps four, batches of the product were contaminated. Although the exact number of individuals involved remains to be determined, it is certainly in the hundreds to low thousands. Those who have filed complaints thus far have made claims with essentially the same causes of action. Certainly each of these plaintiffs' cases involve individual facts, but for the reasons stated below, the Court is convinced that there are enough common issues of fact and law existing to certify a class on those issues.

### A.  Rule 23(a):

#### 1.  *Rule 23(a)(1): Numerosity.*

■ One of the most difficult aspects of class certification in this case is knowing exactly how many class members may be involved. Defendant argues that no more than several hundred plaintiffs can claim injury from contaminated Albuterol and that all those who can meet the jurisdictional amount must have come forward by now. However, in neither of its briefs does the Defendant argue that the Plaintiffs cannot meet the numerosity requirement. For their side, the Plaintiffs favoring a class state that four batches of 44,000 vials of contaminated Albuterol were distributed to the public, leading to a class with 176,000 potential members. As extreme as these Plaintiffs' position may be, it is clear to the Court that the number of claims is not limited to the thirty cases currently before it, and that the amount of filings is likely to grow.

■ The number of plaintiffs in this instant case is far lower than some recent product liability class actions. *See, In re A.H. Robins Co., Inc.*, 880 F.2d 709 (4th Cir.1989) (Dalkon Shield litigation), and *In re School Asbestos Litigation*, 789 F.2d 996 (3d Cir.1986), *cert. denied*, 479 U.S. 852, 107 S.Ct. 182, 93 L.Ed.2d 117 (1986). However, it is significantly larger than many other classes certified under Rule 23. *See Afro American Patrolman's League v. Duck*, 503 F.2d 294 (6th Cir.1974) (class action in employment discrimination case proper where thirty-five plaintiffs are involved). The Court also recognizes that it is still in the early stages of this litigation, and that conflicting facts, such as the number of class

members, should be construed in favor of the class. *Esplin v. Hirschi,* 402 F.2d 94 (10th Cir.1968), *cert. denied,* 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1968); *In re Carbon Dioxide Anti–Trust Litigation,* 149 F.R.D. 229 (M.D.Fla.1993).

Since one of the key considerations in the numerosity requirement is that "joinder of all members is impracticable" a further element of Rule 23(a)(1) is the geographic distribution of the plaintiffs. *Garcia v. Gloor,* 618 F.2d 264, *reh'g denied,* 625 F.2d 1016 (5th Cir.1980), *cert. denied,* 449 U.S. 1113, 101 S.Ct. 923, 66 L.Ed.2d 842 (1980). It is undisputed that the Defendant distributed Albuterol though the stream of commerce and that plaintiffs in the instant litigation reside in Hawaii to Massachusetts, and in virtually every state in between. Therefore, the Court concludes that the numerosity requirement has been met.

### 2. Common Questions of Law and Fact, Rule 23(a)(2).

■ There are fundamental issues of both law and fact that are common to the class. In fact, the common questions in this case are more straight forward than those in many product liability cases. Here, the Court has only one defendant, one product, with no marketshare issues or other complications that are present in most large product liability actions.

Defendant Copley argues that the instant litigation will turn on three individual issues: (1) Did the individual plaintiff use Albuterol that was contaminated? (2) Did the plaintiff suffer injury? and, (3) Did the Defendant's product cause the injury? Certainly it is true that these issues prevent certification for all the matters before the Court, but there also are numerous other common questions of liability that must be answered before the individual issues are reached. These threshold questions include: (1) Were the Defendant's manufacturing processes defective? (2) Was the Defendant negligent in its manufacture and distribution of Albuterol? (3) Did the Defendant breach any warranties in selling its product? and, (4) Are *pseudomonas fluorescens* or other possible contaminants dangerous to the human body? These questions must be answered in every plaintiff's case and may be efficiently resolved through partial class certification in the manner discussed below.

■ It is not required that all of the issues of a case be common for a court to certify a class and individual issues may still exist. *Weiss v. York Hosp.,* 745 F.2d 786 (3d Cir. 1984), *cert. denied,* 470 U.S. 1060, 105 S.Ct. 1777, 84 L.Ed.2d 836 (1984). Such is the case here because alongside the obvious common issues are individual issues on causation and injury. Nonetheless, many common issues do exist and Rule 23(a)(2) is satisfied.

### 3. Typicality of the named Plaintiffs, Rule 23(a)(3).

■ One of the sharpest contentions between the parties is whether or not the named Plaintiffs' claims are typical of those of the class. In their initial *Holmes* brief, the Defendant attacks the merits of the named Plaintiffs' claims, proposing that they cannot represent a class when they have no claim themselves. Such an argument may succeed at trial, but the Court agrees with the Plaintiffs that is it inappropriate for it to examine the merits at this early stage. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). For the purposes of the Motion for Class Certification, the Court will take the allegations of the named Plaintiffs as true. *Esplin v. Hirschi,* 402 F.2d 94 (10th Cir.1968), *cert. denied,* 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1968); *In re Carbon Dioxide Anti–Trust Litigation,* 149 F.R.D. 229 (M.D.Fla.1993).

In the Master Class Action Complaint, the class is defined as "all persons who suffered damages as a result of the inhalation of Albuterol manufactured, supplied, distributed or placed in commerce by Defendant." Such a class would necessarily include not only the actual users of Albuterol, but also those who can claim as relatives of the users and executors of the estates of those who claim wrongful death. Each of these three major types of plaintiffs is represented by the seven named Plaintiffs. Representing those claiming personal injury from use of Albuterol are Plaintiffs Michelle Holmes, Nieltje Gedney,

Cortney Taylor, and Trent Richards. Representing those plaintiffs alleging damages because of injury to a loved one are Tracey Taylor, mother of Plaintiff Cortney Taylor, and Tammy Richards, wife of Plaintiff Trent Richards. Finally, representing the estates of decedents claiming wrongful death is Plaintiff Lawrence Blair, husband and petitioner to be executor of the estate of Dorothy Blair.

The injuries alleged by these named Plaintiffs are not the most complex. This is not a case with delayed injuries or future risk. On the contrary, the Plaintiffs in the instant case all claim that they used Albuterol to treat existing respiratory illnesses and instead the product made those problems significantly worse. A review of the other cases before this Court demonstrates that the named Plaintiffs' claims are, in fact, typical.

■ The Court also finds it significant that named Plaintiffs may be replaced by others at any stage of the litigation. *Carpenter v. Stephen F. Austin State Univ.*, 706 F.2d 608, *reh'g denied*, 712 F.2d 1416 (5th Cir.1983). Therefore, even if the Defendant's arguments are successful at a later stage of this litigation, there may be other class members who may serve as named plaintiffs.

### 4. Adequacy of Representation, Rule 23(a)(4).

■ The next consideration, and in the Court's opinion one of the most important, is whether the named Plaintiffs will adequately and fairly represent the interests of the unnamed members of the class. Such a factor is vital because class actions are intended not to serve the named plaintiffs, but instead to protect the interests of those plaintiffs who have not been named. Partial class certification is the best way to protect those plaintiffs who do not have the resources to sue on their own.

■ Although the Defendant attacks the adequacy of representation requirement by challenging the merits of the named Plaintiffs' claims, the Court should not consider such evidence for the purposes of this motion. *Eisen, supra.*

Considering the adequacy of representation, the Court believes that the necessary prerequisites for class certification are present, and that the representation requirement is an ongoing one. The Court considers its duty is to ensure that the named Plaintiffs adequately serve the interests of those they represent. *Gulf Oil v. Bernard,* 452 U.S. 89, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981).

### B. The Requirements of Rule 23(b).

The named Plaintiffs ask for class certification under Rule 23(b)(1)(A), Rule 23(b)(2) and Rule 23(b)(3). Each of these sections has different requirements that must be considered separately.

### 1. Risk of inconsistent or varying judgments, Rule 23(b)(1)(A).

■ As the Defendant correctly argues in its initial *Holmes'* brief, the Rule 23(b)(1)(A) is for the benefit of those adverse to the putative class, not those seeking the class. *Pruitt v. Allied Chem. Corp.*, 85 F.R.D. 100 (E.D.Va.1980). The mere fact that some plaintiffs may win their suits against a defendant while others may lose is not sufficient grounds under Rule 23(b)(1)(A) to permit or prevent certification of a class. *In re Bendectin Prods. Liab. Litig.*, 749 F.2d 300 (6th Cir.1984). Even though the Plaintiffs make a claim for some declaratory relief, this is not part of their central monetary claims and is insufficient to invoke Rule 23(b)(1)(A). *Pruitt,* 85 F.R.D. at 107. Therefore, the Court concludes that the class certification under this part of Rule 23(b) is inappropriate.

### 2. Final injunctive or declaratory relief, Rule 23(b)(2).

■ In their sixth cause of action, the Plaintiffs seek a declaratory judgment ordering the Defendant to perform medical monitoring and epidemiological studies for their benefit. While injunctive relief is an attractive solution for plaintiffs in many situations, it is clear to the Court that the Plaintiffs in the instant case seek primarily legal damages. To certify a class under Rule 23(b)(2) where the declaratory relief sought is inci-

dental to the larger claims for damages would be contrary to the purposes of Rule 23(b)(2). *In re Asbestos Sch. Litig.*, 104 F.R.D. 422 (E.D.Pa.1984).

As this litigation proceeds, the Court may determine that the declaratory relief sought by the Plaintiffs is a more prominent part of their claim. If this occurs, the Court will exercise its power under Rule 23(c)(1) to grant certification for injunctive relief. Until or unless this happens, however, the Court denies the Plaintiffs' Motion for Class Certification under Rule 23(b)(2).

### 3. Class certification under Rule 23(b)(3).

█ The last section under which the Plaintiffs seek class certification is the default provision of Rule 23(b)(3), which the Court believes the Plaintiffs have satisfied. This rule directs the Court to two principal considerations: the predominance of common questions of fact and law, and the superiority of class action to other methods of adjudication.

The common question standard of Rule 23(b)(3) is less demanding than that for classes under Rule 23(b)(1) or Rule 23(b)(2). Wright & Miller, *Federal Practice and Procedure*, Civil 2d § 1777 (1986). Moreover, while Rule 23(a)(2) requires that common issues exist, this rule goes farther to require that the commonality "predominate." According to authorities, the inquiry here is a pragmatic one: are there enough common questions to justify a common adjudication? *Id.* at § 1778.

As discussed above, the Defendant is correct in pointing out significant issues which require individual determination, but is incorrect in its assertion that there are not equally significant common issues. Because of this dichotomy, the Court must look to its authority under Rule 23(c)(4)(A) to grant class certification for particular issues, which the Court may do sua sponte. *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980); *Doe v. Guardian Life Ins. Co. of Am.*, 145 F.R.D. 466 (N.D.Ill.1992). The theory behind this rule is that class certification on common issues should not be lost just because vital issues remain individual. Wright & Miller, *Federal Practice and Procedure:* Civil § 1790 (1986).[1]

The Court is also impressed with the well-reasoned decision of Judge Grady in *Wadleigh v. Rhone–Poulenc Rorer, Inc., et. al.*, 157 F.R.D. 410, (N.D.Ill.1994). In that case, which was also a MDL case, Judge Grady recently decided to certify a partial class where plaintiff hemophiliacs sought compensation for their exposure to the Human Immunodeficiency Virus through blood transfusions. Although the case before Judge Grady is similar to the instant one, there are also significant differences. For example, in *Wadleigh* there are a number of defendants and complicated issues of standards of care and knowledge. Despite these differences, Judge Grady's decision is instructive in its analysis of partial certification. Moreover, many courts have seen the benefits to partial certification for common issues. *See, Horton v. Goose Creek Ind. Sch. Dist.*, 690 F.2d 470, *reh'g denied*, 693 F.2d 524 (5th Cir.1982) (class of plaintiffs challenging drug searches certified for issue of liability only); *Endo v. Albertine*, 147 F.R.D. 164 (N.D.Ill.1993) (plaintiffs class certified in securities fraud case for issue of materiality of misrepresentations only); and *Werlein v. United States*, 746 F.Supp. 887 (D.Minn.1990) (class certified for issue of injunctive relief only).

Like the defendants in *Wadleigh*, Defendant Copley may face slightly different standards for negligence if it faces trials throughout the United States. As Judge Grady concluded, the standard for ordinary negligence does not significantly differ throughout the country, and the differences that do exist can be remedied through careful instructions to the jury.

---

1. The Official Comment for Fed.R.Civ.P. 23(c)(4)(A) states, "This provision recognizes that an action may be maintained as a class action as to particular issues only. For example, in a fraud or similar case the action may retain its 'class' character only through the adjudication of liability to the class; members of the class may thereafter be required to come in individually and prove the amounts of their respective claims." This is exactly the type of issue division ordered by the Court.

Further, the difficult issues of foreseeability confronting Judge Grady are not present here. Nor does this Court have to surpass the obstacle of anything like a "blood shield" statute as in the *Wadleigh* case. But, like Judge Grady, the Court does conclude that individual questions predominate as to the issues of causation and injury. Such matters are typically individual, but in the instant case they are even more particularized because most of the Plaintiffs who claim physical injury had significant health problems that necessitated their use of Albuterol in the first place.

■ The Court concludes the common issues predominate the Plaintiffs' claims for strict liability, negligence, negligence per se, breach of warranties, and the request for declaratory relief. These issues, surrounding the Defendant's liability for the contaminated Albuterol, may be tried to a single jury in a unified trial. Then, if the Plaintiffs are successful, class members may pursue their individual cases in separate trials to determine if they suffered an injury from the contaminated Albuterol, and if so, the proper measure of any damages. Since the compensatory damages must be measured individually, based on facts and local state law, so must the measure of any punitive damages. Therefore, claims for compensatory and punitive damages will also be tried individually. While this approach may not be the most efficient, the Court believes that is the most equitable approach to the mixture of common and individual facts in the present litigation.

The last, possibly most disputed, consideration for the Court under Rule 23(b), is whether class certification is "superior to other available methods for the fair and efficient adjudication" of the case. While the Court admits that the superiority of class certification in this case is not overwhelming, the Court believes it to be present. It is true that consolidation by the MDL Panel before this Court offers many of the same benefits as class certification. Discovery is streamlined and party contact is unified. Unfortunately, however, without class certification, this efficiency would end at trial. All the transferor courts would again have to adjust their dockets to find trial dates sufficient to try all the matters involved. Scores of plaintiffs' attorneys would have to prepare largely duplicative trial materials and the Defendant would likely book expert witnesses for years to come. The Court believes partial class certification is a better way.

The Court does not take lightly the fact that several groups of Plaintiffs have raised significant objections to class certification. For example, some members of the Plaintiffs' steering committee oppose class certification and submitted arguments that class certification would make settlement less likely and will possibly divide the interests of the various plaintiffs' attorneys. However, the Court considers not just the interests of the plaintiffs' attorneys, but also the interests of the parties and the judicial system. In these considerations efficiency is not the only factor, but it is also not the only reason to certify a class.

After hearing hours of debate from those opposing and favoring class certification, one attorney from behind the bar offered the most persuasive argument for the superiority of class certification. He simply stated that he represented only six plaintiffs and that none of them had very large claims. This counsel then argued that without class certification neither he nor his clients had the resources to have their day in court against a large defendant like Copley. The Court, too, believes that no plaintiff with a legitimate claim for a jurisdictional amount should be eliminated from federal court because he does not have the resources to litigate, and concludes that class certification is a superior method of adjudication.

Many courts have recognized the value of class certification to protect litigants with smaller claims. Over fifty years ago the Seventh Circuit held,

> to permit the defendant to contest liability with each claimant in a single separate suit would, in many cases, give defendants an advantage which would almost be equivalent to closing the door of justice to small claimants. This is what we think the class suit practice was to prevent.

*Weeks v. Bareco Oil Co.*, 125 F.2d 84, 90 (7th Cir.1941). *See also, Sala v. National R.R.*

*Passenger Corp.*, 120 F.R.D. 494 (E.D.Pa. 1988) (in suit over train accident, class action superior method of adjudication to protect interests of plaintiffs with smaller claims).

Finally, the Court recognizes that class certification under Rule 23(b)(3) offers a benefit for plaintiffs opposing class certification. Those plaintiffs who conclude that a class action is not in their interest may opt-out of the class, while the rest of the plaintiffs can pursue their claims in a consolidated manner.

## II. RELATED MATTERS

### A. Notice to Class Members.

In light of the Court's decision on class certification, the Court and the parties must arrive at a method for the "best notice practicable" pursuant to Rule 23(c)(2). Based on some of the oral arguments made to the Court on September 21, 1994, it is apparent the notice should not be terribly complicated. Because Albuterol was distributed through prescriptions and Copley has already contacted distributors through its recall, the parties should not face many obstacles to proper notice to class members. Therefore, the Court orders that lead counsel submit proposals for conducting notice within fifteen days of this Order and that it will hear any necessary arguments during its next hearing on November 16, 1994, in Cheyenne, Wyoming.

### B. The Conditional Class and Motion to Remand in *Mack*.

Also on September 21, 1994, the Court heard from Counsel representing the *Mack* plaintiffs, a conditional class action from Alabama that had been certified by a state judge before the Defendant removed the action to federal court. Defendant has raised fundamental questions challenging the manner in which this class was certified, but in light of the its decision here, the Court need not consider the Defendant's objections. Those plaintiffs who fit the definition of the class in the Master Class Action Complaint are merged into this class, and those *Mack* plaintiffs who are outside the class definition, i.e., those deserving only refunds for Albuterol, are outside the jurisdiction of federal court. *Zahn v. International Paper*, 414 U.S. 291,

94 S.Ct. 505, 38 L.Ed.2d 511 (1973). Therefore, the conditional class certification in *Mack, et al. v. Copley*, MD–1503, is vacated by this Order, and the Plaintiffs' Motion to Remand is denied.

For the reasons aforesaid, it is hereby **ORDERED** that:

(1) The Plaintiffs' Motion for Class Certification under Federal Rules of Civil Procedure 23(b)(1)(A) and 23(b)(2) is **DENIED** but that the Plaintiffs' Motion for Class Certification under Rule 23(b)(3) is **GRANTED IN PART** pursuant to Federal Rule of Civil Procedure 23(c)(4)(A), for the class defined as follows:

> All persons throughout the United States and its territories who suffered damages as a result of the inhalation of Albuterol manufactured, supplied, distributed or placed in commerce by Copley Pharmaceutical, Inc.;

and that the class is certified for the following issues of liability: strict liability, negligence, negligence per se, breach of warranties, and requests for declaratory relief;

(2) Subject to further order of the Court, Plaintiffs Michelle Holmes, Nieltje Gedney, Cortney Taylor, Tracey Taylor, Trent Richards, Tammy Richards and Lawrence Blair are class representatives and Stanley M. Chesley, Esq., is designated lead counsel for the class.

(3) During its next status conference on November 16, 1994, the Court will hear counsels' suggestions for any necessary amendments to the the class and issues certified by this Order;

(4) Lead Counsel **SHALL** submit proposals for class notification within fifteen days of receiving this Order, which the Court will consider during its next status conference on November 16, 1994; and

(5) The Conditional Class Certification in *Mack, et al. v. Copley*, MD–1503 is hereby **VACATED** and the *Mack* Plaintiffs' Motion to Remand is **DENIED**.