**In re TELECTRONICS PACING SYSTEMS, INC., ACCUFIX ATRIAL "J" LEADS PRODUCTS LIABILITY LITIGATION.**

**No. MDL–1057.**

United States District Court,
S.D. Ohio,
Western Division.

Nov. 17, 1995.

---

Stanley M. Chesley, Waite, Schneider, Bayless & Chesley, Cincinnati, OH, Ronald S. Parry, Arnzen, Parry & Wentz, P.S.C., Covington, KY, Richard S. Wayne, Strauss & Troy, Cincinnati, OH, Louis F. Gilligan, Keating, Muething & Klekamp, Cincinnati, OH, for Plaintiffs.

Charles C. Kline, Marcos D. Jimenez, White & Case, Miami, FL, for Cordis.

Barry R. Davidson, Coll, Davidson Carter, Smith, Salter & Barkett, Miami, FL, for Telectronics Holdings Ltd.

I. Blakeley Johnstone, III, Franz Skok, Johnstone, Skok, Loughlin & Lane, West-field, NJ, for Newark Beth Israel and Aris Omar.

Brian Corrigan, Springfield, NJ, for Hector Rubenstein, M.D.

Evelyn Farkas, Francis & Berry, Morris-town, NJ, for Dr. Ravi Karanam.

Roger P. Thomasch, Leslie A. Eaton, Bal-lard, Spahr, Andrews & Ingersoll, Denver, CO, Gerald J. Rapien, Taft, Stettinius & Hollister, Cincinnati, OH, for PDL/Nucleus.

Christopher W. Besant, Cassels, Brock & Blackwell, Toronto, Canada, for Pacific Dunlop.

Patrick S. Coffey, Deena S. Newlander, Gardner, Carton & Douglas, Chicago, IL, U.S. Corporate Counsel for PDL.

A. Danner Frazer, Frazer, Greene, Phil-pot, Upchurch, Mobile, AL, for Leah Ash-worth–Edge, Dana Sjosteet, Charles Spatch and Ball Medical, Inc.

John M. Roels, Wheeler Upham, Grand Rapids, MI, for Medtronic, Inc.

## ORDER GRANTING MOTION FOR CLASS CERTIFICATION

SPIEGEL, District Judge.

This matter is before the Court on the Plaintiffs' Motion for Class Certification (doc. 2 in Case No. C–1–95–094, entered in this action on March 10, 1995), the Defendants' Memorandum in Opposition (doc. 47), the Plaintiffs' Response (doc. 55), the Defendants' Reply to the Plaintiffs' Response (doc. 55) and the Defendants' Supplemental Memorandum (doc. 57), the Plaintiffs' submission of additional cases (doc. 63) and the Defendants' Supplemental Memorandum (doc. 66).

## BACKGROUND

The Plaintiffs seek to certify the following class:

> [a]ll persons worldwide who have had Accufix atrial 'J' pacemaker leads, Model 330–801, Model 329–701 and Model 088–812 placed in their bodies, and spouses of such persons.

Master Complaint, Document 37, ¶ 31. The Court heard oral argument on this issue on September 8, 1995, at 2:00 P.M.

### The "J" Stiffener Wire

The heart pacing system at issue consists of three main parts: a pulse generator, leads, and a programmer. Each pacing system usually contains one or two leads, which traverse through a person's veins, directly from the pulse generator to inside the heart. The leads utilize a retention wire to hold the atrial lead in the "J" shape. The lead's retention wire is a filament of one of two metal alloys, Elgiloy or MP35N. The retention wire has nothing to do with the conduction of the electrical signal or the operation of the pacing system since it is not electrically active in the pacing circuit. The retention wire is encased in polyurethane insulation and bends back and forth within the system. This use has caused the retention wire to break in some instances and poke through the polyurethane. Such a fracture can cause serious injury to the heart or blood vessels.

Defendant TPLC Pacing Systems, Inc. and TPLC, Inc. (collectively "TPLC") [1] manufactured the "J" lead at issue in this case, although other companies may have supplied them with the component parts including the retention wire. TPLC distributed over 40,-000 "J" leads [2] worldwide between 1988 and 1994. TPLC distributed Models 329–701 and 330–801 in the United States and Model 033–812 outside of the United States. Estimates show that in excess of 20,000 leads are in use in the United States.

The Plaintiffs claim that all the "J" leads in the three models are essentially the same. While the models may differ in some minor details, the Plaintiffs claim that they are defective because of the same defective design: a "J" stiffener wire that fractures as a result of metal fatigue. The Defendants argue that pacemakers are inherently dangerous devices, and that various reasons exist why the retention wire could fracture, including the procedures the physicians used to install the device.

**The History**

On October 21, 1994, TPLC notified the Food and Drug Administration ("FDA") that it was recalling all unsold leads. On December 19, 1994, the Plaintiffs claim the FDA notified TPLC that it classified the recall as a Class I Recall.[3] The FDA issues such notices when it finds that "a reasonable probability that a device intended for human use would cause serious, adverse health consequences or death." 21 U.S.C. § 360h(e)(1).

TPLC also initiated the Accufix Atrial "J" lead Multi–Center Study. The study evaluates the prevalence of retention wire fracture at ten international medical centers and uses x-ray techniques to detect fractured wires. TPLC also created a physician advisory committee to help it with patient management issues.

On November 3, 1994, TPLC issued a letter to physicians recalling all un-implanted "J" leads, models 330–801 and 329–701. TPLC issued these letters after receiving seven reports of fracture of the "J" shaped retention wire. TPLC has now received notice of eighteen fractures, including two which caused deaths. Additionally, four people have died from having the lead extracted.

**The Proposed Class Representatives**

The Plaintiffs have eight people who are seeking to represent the class.

**1. Mr. Edwards**

Mr. Edwards is a forty-eight year old Ohio resident, who was implanted with a pacemaker system which included a "J" lead on October 10, 1991. In June 1995, Mr. Edwards had his lead explanted because it failed to conduct the electrical impulses necessary for the proper functioning of his pacemaker. Mr. Edwards had the lead explanted after his doctor warned him of the possibility of the stiffener wire fracturing. TPLC paid the expenses for having the Lead extracted.

**2. Mr. Owens**

Mr. Eugene Owens is a seventy-two year old Ohio resident, who had the pacemaker system including the "J" lead implanted on June 24, 1992. Mr. Owens lead has functioned without failure and has not caused him any physical injury. Once he learned of the possibility of fracture, however, he has had "many sleepless nights worrying about [his] defective pacemaker." Eugene Owens Answer to Interrogatory 8. Mr. Owens still has the pacemaker system.

**3. Mrs. Owens**

Mrs. Owens claim against TPLC is based upon loss of consortium. She seeks to represent spouses of implant recipients.

**4. Mr. Bechert**

Mr. Bechert is an eighty-two year old Ohio resident, who had the pacemaker system in-

---

1. Telectronics Pacing Systems, Inc. sole business is to hold certain industrial property rights, real estate and equity in TPLC, Inc. TPLC actually manufactures the pacemakers and pacemaker leads.

2. While we refer to the device as a "J" lead, it is important to note that this action specifically focuses upon the retention wire that fractures.

3. The Plaintiffs state this in their section of facts, but fail to provide the Court with any such correspondence to back up their claim.

cluding the "J" lead implanted on November 12, 1992. Mr. Bechert's Leads have functioned without failure, fracture or complication. Mr. Bechert learned of the possibility of a retention wire fracture from the Defendants, and although his lead has not fractured he fears that it may in the future.

### 5. Mrs. Bechert

Mrs. Bechert also seeks to represent the class of spouses of implant recipients and seeks damages for loss of consortium.

### 6. Mr. Cheyene

Mr. Cheyene is seventy-six year old former farmer, who had the pacemaker system including the "J" lead implanted on March 11, 1993. After finding a possible retention wire fracture, Mr. Cheyene's lead was explanted on June 19, 1995. The doctors successfully removed the lead except for a small portion of the tip, which broke off and remains lodged in the scar tissue in the heart. Apparently, the remaining piece has not caused Mr. Cheyenne any problems.

### 7. Mrs. Cheyene

Mrs. Cheyene seeks to represent the class of spouses of implant recipients and seeks damages for loss of consortium.

### 8. Ms. Warren

Ms. Warren is a thirty-year old Canadian citizen who had the pacemaker system including the "J" lead implanted in Canada. Ms. Warren first learned of a potential problem with her lead, specifically the retention wire, in January, 1995. Her cardiologist explained to her that she may have potential problems, and then a chest x-ray indicated that the retention wire had split and a small piece of metal had migrated into her lung. Eventually, doctors removed both the lead and the pulse generator.

### The Causes of Action

The Master Class Action Complaint alleges the following causes of action: strict liability; negligence; failure to warn; breach of implied warranty; breach of express warranty; fear of future product failure; intentional infliction of emotional distress; negligent infliction of emotional distress; fraud; misrepresentation; medical monitoring; and loss of consortium. The Plaintiffs also seek punitive damages.

## DISCUSSION

The Court has considered the briefs and oral arguments of the parties to this litigation. We have also studied the mandates of Rule 23. This action is in its early stages, and that makes deciding class certification difficult. The Court, however, should decide class certification "[a]s soon as practicable." Fed.R.Civ.P. 23(c)(1). Furthermore, the Court may modify the class later on pursuant to Rule 23(c)(1), and Rule 23(c)(4)(A) allows the Court to grant class certification for particular issues. Considering all of these factors, as well as those below, the Court concludes that a Plaintiffs' class should be certified for certain common issues.

### I. Propriety of Class Action

■ The Defendants first argue that the framers of Rule 23 did not intend for mass tort and product liability cases to be class actions. They cite the advisory committee note which states:

A mass accident resulting in injuries to numerous persons is ordinarily not appropriate for a class action because of the likelihood that significant questions, not only of damages but of liability and defenses to liability, would be present, effecting individuals in different ways. In the circumstances, an action conducted nominally as a class action would degenerate in practice into multiple lawsuits separately tried.

39 F.R.D. 69, 103 (1966). Most commentators, however, have changed their viewpoint. They now agree that these actions should be tried as class actions. "The interests of justice are not furthered by the needless, time-consuming repetition of evidence and repeated litigation of issues in individual trials on a one-by-one basis which are common to the claims of all affected." 3 *Newberg on Class Actions 3d* § 17.01 (1992). In *Cimino v. Raymark Indus.,* Civ.Action No. B–86–0456–CA (E.D.Tex.1989) (asbestos), Judge Parker stated "[t]o continue to re-litigate

issues regarding the same products, the same warnings, the same producing causes questions, and the same conduct through the same witness testimony, produced by the same lawyers is absurdity." Perhaps the most compelling argument, however, is that put forth by Professor Charles Alan Wright, who participated in amending Rule 23. He has stated:

> I was an ex officio member of the Advisory Committee on Civil Rules when Rule 23 was amended, which came out with an Advisory Committee Note saying that mass torts are inappropriate for class certification. I thought then that was true. I am profoundly convinced now that that is untrue. Unless we can use the class action and devices built on the class action, our judicial system is simply not going to be able to cope with the challenge of mass repetitive wrong that we see in this case and so many others that have been mentioned this morning and afternoon.

3 *Newberg on Class Actions 3d* § 17.06 (1992).

Defendants argue that this is not a mass tort but a products liability action. Products liability actions are just one form of mass torts. In fact, many courts including this one have certified similar types of class actions. *See Bowling v. Pfizer,* 143 F.R.D. 141 (S.D.Ohio 1992) (overruled objection to proposed settlement class of heart valve recipient class); *Wilson v. Siemens Pacesetter, Inc.,* Case No. C–1–93–188 (S.D.Ohio 1993) (pacesetter pacemakers); *Dante v. Dow Corning Corp.,* 143 F.R.D. 136 (S.D.Ohio 1992) (breast implant); *Vorhis v. American Medical Systems,* Case No. C–1–94–824 (S.D.Ohio March 16, 1995) (inflatable penile prostheses). Therefore, products liability actions can be certified as class actions when the requirements of Federal Rule of Civil Procedure 23 have been met.

## II. Rule 23(a) Elements

### 23(a) Class Actions

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Under Rule 23(a) there are four prerequisites to maintaining a class action: numerosity, commonality, typicality and adequacy of representation.

### A. Rule 23(a)(1)—Numerosity

Under Rule 23(a)(1) the putative class must be "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). "Satisfaction of the numerosity requirement does not require that joinder is impossible, but only that plaintiff will suffer a strong litigational hardship or inconvenience if joinder is required." *Boggs v. Divested Atomic Corp.,* 141 F.R.D. 58, 63 (S.D.Ohio 1991) (citations omitted). In this case, over forty-thousand possible plaintiffs exist, and the Defendants do not contest that the numerosity factor is met.

### B. Rule 23(a)(2)—Commonality

Rule 23(a)(2) requires a showing that there are "questions of law or fact common to the class...." Fed.R.Civ.P. 23(a)(2). "However, Rule 23 does not require that all issues of law or fact be common. Rather, a single issue common to the proposed class is sufficient to satisfy the Rule 23(a)(2) requirements." *In re Fernald Litigation,* Case No. C–1–85–149, at *11, 1986 WL 81380 (S.D.Ohio 1986) (citations omitted). In fact, the requirements of Rule 23(a)(2) can be satisfied "even if individual members are required to show their particular right to recover, *Jennings Oil Co. v. Mobil Oil Corp.,* 80 F.R.D. 124, 129 n. 8 (S.D.N.Y.1978), sustain varying degrees of injury, *Gerdom v. Continental Airlines, Inc.,* 648 F.2d 1223 (9th Cir.), *cert. denied,* 460 U.S. 1074, 103 S.Ct. 1534, 75 L.Ed.2d 954 (1981); or [defendants] raise individual defenses against class plaintiffs." *In re Fernald,* Case No. C–1–85–149 at *11, 1986 WL 81380.

Defendants argue that no common questions of fact or law exist in this case.

We disagree. The threshold of commonality is not high, and in fact has been relatively easy to satisfy in mass tort cases. *See Linkous v. Medtronic, Inc.*, Case No. C-1-84-1909, 1985 WL 2602 (E.D.Pa.1985) ("[i]t is required for 23(a)(2) purposes only that plaintiff establish the existence of some common questions of fact and law."); *In re Orthopedic Bone Screw Prod. Liab. Litigation*, Case No. C-1-93-7404, slip op. at 13, 1995 WL 273597 (E.D.Pa. February 22, 1995) ("a single common question is sufficient to satisfy Rule 23(a)(2).") (citing *In re Asbestos School Litigation*, 104 F.R.D. 422, 429 (E.D.Pa.1984)). In this case, there is a common question as to whether the "J" leads, containing the retention wire, are defective. Specifically, the facts surrounding the claims for negligence, fraud, breach of warranty and product liability would be the same for all class members. *See Bowling v. Pfizer*, 143 F.R.D. at 158) ("Facts regarding product liability, negligence, breach of warranty, and fraud would be substantially similar for all class members."). Thus, the Court may try the above issues and reserve the remaining issues, including causation and damages, for individual treatment.[4] *See Sterling v. Velsicol Chemical Corp.*, 855 F.2d 1188, 1197 (6th Cir.1988) ("No matter how individualized the issue of damages may be, these issues may be reserved for individual treatment with the question of liability tried as a class action."). Consequently, the fact that individual issues may exist after the common issues are resolved does not mean that a class action is impermissible. *Id.*

The Defendants argue that many reasons exist as to why the leads may fail. This argument, however, does not go to whether a class is proper, but rather goes to the merits. The Defendants can argue to the trier of fact that they should not be held liable because of the many reasons that the leads could have failed. Consequently, we find a commonality of certain issues.

## C. Rule 23(a)(3)—Typicality

■ The Defendants also argue that the representative Plaintiffs' claims are not typical of the class. The typicality requirement overlaps other requirements and is designed to ensure that the class representatives will fairly and adequately prosecute the claims of the absent class members.

> A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory.... The typicality requirement may be satisfied even if there are factual distinctions between the class members and those of other class members.

*De La Fuente v. Stokely–Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir.1983) (citations omitted); *see also Senter v. General Motors Corp.*, 532 F.2d 511, 525 n. 31 (6th Cir.1976) ("[t]o be typical, a representatives's claim need not always involve the same facts or law, provided there is a common element of fact or law.").

The Defendants attack the merits of the named Plaintiffs' claims, arguing that some of the named Plaintiffs cannot represent the class when their leads are operating without failure. This, however, goes to the merits of the Plaintiffs' claims and should not be decided by the Court at this stage. In *In re Copley*, 158 F.R.D. 485 (D.Wyo.1994), the Defendants claimed the proposed class representatives could not represent the class because they lacked meritorious claims themselves. Judge Brimmer held that "[s]uch an argument may succeed at trial, but the Court agrees with the Plaintiffs that it is inappropriate for it to examine the merits at this early stage." *Id.* at 489. At this stage, the Court must take the allegations of the named Plaintiffs as true. *Id.*

The Master Complaint alleges that the class members were injured as a result of Defendants' negligence in producing a defective "J" lead, the Defendants failure to warn

---

4. For example, even if the trier of fact found the Defendants were negligent, the individual plaintiffs still would have to show that their negligence caused an injury and prove the individual damages. Additionally, the Court finds issues such as emotional distress and loss of consortium are not proper for class treatment. These issues depend upon the particular situation of each individual.

the recipients, and the Defendants breach of an implied or expressed warranty. These claims focus upon the Defendants' conduct, rather than that of the individual Plaintiffs. The claims and legal theories of all of the class members are the same for these issues. Consequently, the Plaintiffs have satisfied the typicality requirement of Rule 23(a)(3).

### D. Adequacy of Representation—Rule 23(a)(4)

■ Finally, the representative parties must "fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). The Court looks to both the class representatives and their counsel to determine if the class is adequately represented. *In re Cordis*, MDL 850, at *18 (S.D.Ohio 1992). The Defendants do not contest the competence of class counsel, and the Court has no question that class counsel is competent to represent the class in this litigation.

■ The Defendants, however, claim that the class representatives will not adequately protect the interests of the class. The Sixth Circuit has focused upon two criteria in determining whether the representation of the class is adequate:

1) The representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests for the class through qualified counsel.

*Senter*, 532 F.2d at 525 (citations omitted). The various class representatives have common interests with the unnamed members of the class, as noted above in the Background section. All of the class representatives share a common interest with the unnamed Plaintiffs in that they are seeking compensatory damages for their alleged injuries. Additionally, no one has presented evidence that the interests of the named Plaintiffs is antagonistic to any unnamed members.[5] Finally, the Court finds that the class representatives, through their counsel, will vigorously prosecute the interests of the class. Consequently, the Court is satisfied that the Plaintiffs and their counsel will adequately represent the class.

### III. Rule 23(b)

The Plaintiffs must also satisfy one of the requirements of Rule 23(b) to maintain a class action. *Bowling*, 143 F.R.D. at 160 (S.D.Ohio 1992). The Plaintiffs seek both injunctive and monetary relief.

■ Initially, the Plaintiffs argue that the Court should certify a class under 23(b)(1) or 23(b)(2) for injunctive relief. The Plaintiffs request that the Court order a monitoring center be established. According to Rule 23(b)(2), injunctive relief or declaratory relief is appropriate when the party opposing the class has acted or refused to act on grounds generally applicable to the class. When a class action is primarily one for monetary damages, it is best to establish it under Rule 23(b)(3). *In re Asbestos School Litigation*, 104 F.R.D. 422, 438 (E.D.Penn.1984); *In re Copley*, 158 F.R.D. at 491. In this case, however, it seems that the Plaintiffs major concern is whether the retention wire in the "J" leads are defective. Therefore, this action is not one primarily for damages. *See Day v. NLO, Inc.*, 144 F.R.D. 330, 336 (S.D.Ohio 1992) (establishing medical monitoring program). Consequently, the Court ORDERS a medical monitoring class be established pursuant to 23(b)(2). The Court, however, recognizes that the TPLC has established a FDA-supervised fracture study, including a multi-center study. Therefore, the Court will refrain from ordering any type of medical monitoring program be established at this time, until the Court can determine the adequacy of the TPLC's established programs.

The Plaintiffs also seek monetary relief pursuant to Rule 23(b)(3). In order to satisfy Rule 23(b)(3), the Court must find:

---

**5.** The Defendants claim that the class representatives have weak claims, which will inevitably be a source of inter-class conflict. The Court, however, will not consider the merits of the litigation at this time, but instead must accept the facts of the Complaint as true. *Weathers v. Peters Realty Corp.*, 499 F.2d 1197, 1201 (6th Cir.1974). This means that the Court should not and will not weigh the strength of the Plaintiffs' claims, nor will we engage in hypothetical analysis about possible future conflicts within the class.

that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed.R.Civ.P. 23(b)(3). The Court's finding that the Plaintiffs have met the commonality requirement of Rule 23(a)(2) is not the same thing as finding that those questions predominate over any questions affecting individual members. *In re Copley*, 158 F.R.D. at 491.

The Plaintiffs argue that the Defendants engaged in the same conduct in manufacturing the "J" leads containing the alleged defective retention wire. The major common issue is whether the Defendants were negligent in producing the "J" leads. As we have previously stated, the only issues this Court will decide is those relating to the Defendants conduct, and not causation or damages.

■ The Defendants argue that negligence law of the state of injury must apply, and thus, the proposed class is unmanageable. We disagree. The definition of negligence, strict liability, misrepresentation and fraud is substantially identical in all jurisdictions. All fifty-one jurisdictions in the United States are in virtual agreement as to negligence in that they apply the Restatement (Second) of Torts § 388. *In re Cordis Corporation*, MDL No. 850, at *35 (S.D.Ohio 1992); *In re Asbestos*, 104 F.R.D. at 434.[6] "As to strict liability, the basic test is Restatement (Second) of Torts § 402(A) that one who sells a product in a defective condition unreasonably dangerous to the user is liable. Forty-seven jurisdictions have adopted strict liability theories and all of them start with the concept of a defective product." *In re Asbestos*, 104 F.R.D. at 434. Additionally, if any differences arise, the

Court can create subclasses pursuant to Rule 23(c)(4). The Court will probably create subclasses for foreign jurisdiction plaintiffs and fraud claims. For example, states vary on whether they require proof of intent as an element in a fraud action, but all states require proof of misrepresentation, materiality of misrepresentation and reliance. *Compare Block v. Block*, 165 Ohio St. 365, 135 N.E.2d 857 (1956) (intent an element); *with Ware v. Scott*, 220 Va. 317, 257 S.E.2d 855 (1979) (intent not an element). Therefore, the Court may create two subclasses for the fraud claims. Additionally, the Court will only try the first three elements of the fraud claim, and will leave the reliance, proximate cause and damages issues to the individual transferor courts and/or separate proceedings if the jury finds the first three elements have been met. The Court concludes that common issues of law do predominate.

The Court must also consider whether common factual issues predominate. Common issues of fact, including whether the "J" leads' retention wire is defective, whether the "J" leads were negligently manufactured, and whether the Defendants made material misstatements, predominate and are common to the members of the putative subclasses.

The Defendants argue that if this Court certifies this as a class action, they will not be able to raise individual defenses against different Plaintiffs. The Defendants further contend that "the entire proceeding would ultimately disintegrate into time-consuming, individual damage and causation trials." Defendants Brief, Document 47, at *58. The Court, however, has prevented such a possibility by only certifying the class for certain common issues that are similar for all Plaintiffs. Therefore, the issues of negligence, strict liability, fraud, misrepresentation and breach of warranty will be tried to a single jury in a unified trial. If the Plaintiffs are

---

**6.** The Defendants cite Chief Judge Posner's decision in *Matter of Rhone–Poulenc Rorer, Inc.*, 51 F.3d 1293 (7th Cir.1995), for the proposition that any negligence class action creates a national common law. We need not re-iterate the excellent critique of that decision by Judge Brimmer in *In re Copley Pharmaceutical, Inc.*, 161 F.R.D. 456 (D.Wyo.1995). We share in Judge Brimmer's misgivings that Judge Posner has effectively re-written Rule 23 for the Seventh Circuit. *Id.*

("Judge Posner's analysis effectively eviscerates Fed.R.Civ.P. 23(c)(4)(A)."). Additionally, unlike Judge Posner's case, the Plaintiffs in this case do not present a novel "serendipity" theory of liability, but rather a standard negligence theory. Even Judge Posner conceded, "that at some level of generality the law of negligence is one, not only nationally but worldwide." *Rhone–Poulenc*, 51 F.3d at 1300.

successful, the class members may pursue their individual cases in separate trials to determine if the Defendants conduct caused their injury and caused them damages. "Since the measure of compensatory damages must be measured individually, based on facts and local state law, so must the measure of punitive damages." *In re Copley,* 158 F.R.D. at 492. Only the cases of the named class representatives will be tried to a completion by the jury. Consequently, the Defendants worries are minimized, and they can raise individualized defenses and contest damages as to each individual.[7]

The Defendants additionally express concerns that many of the proposed class members may not want to be part of the Plaintiffs' class. These members will be free to opt-out of the class. *Id.* at 493.[8]

The final requirement of Rule 23(b)(3) is "that a class action be superior to other methods for the fair adjudication of the controversy." The issues that we consolidated for class treatment are those relating to the Defendants' design and manufacture of the "J" leads, and the Defendants' representation of its product. If the Court did not certify a class these issues would be presented unnecessarily in each trial. Forty thousand possible plaintiffs exist. Denying certification would waste judicial resources and cost the members of the class and the Defendants an extraordinary amount of money. Consequently, the Court concludes that a class action is superior to other forms of adjudication.

## CONCLUSION

The issues surrounding Defendants' negligence, strict liability, breach of warranty, fraud and misrepresentation will be tried to a single jury in a unified trial.[9] Then if the representative plaintiffs are successful, the class members may pursue their individual cases in separate trials and try to prove causation and damages. The representative plaintiffs, however, can try their issues to conclusion with the original jury. Therefore, a final order will come from this Court, which will be appealable.

Accordingly, this Court hereby GRANTS the Plaintiffs' Motion for Class Certification. The Court conditionally certifies the following class:

> [a]ll persons worldwide who have had Accufix atrial 'J' pacemaker leads, including the retention wire, Model 330–801, Model 329–701 and Model 088–812 placed in their bodies.[10]

The Court ORDERS that the Plaintiffs' class be certified for the common issues of negligence, strict liability, fraud, misrepresentation, and breach of warranty. The Court further ORDERS that a medical monitoring class be established. The Court, however, DENIES any certification for causation or damages.

During the next status conference on December 13, 1995, at 4:00 P.M., the Court will hear counsels' suggestions for any necessary amendments to the class and issues certified by this order.

Finally, Lead Counsel SHALL submit proposals for class notification within fifteen days of receiving this Order, which the Court will consider during the status conference on December 13, 1995.

SO ORDERED.

---

7. The Defendants also raised concerns regarding the claims for emotional distress. At this time, however, the Court is not certifying a class for emotional distress or loss of consortium claims.

8. The Court recognizes that the Plaintiffs cannot opt-out of the medical monitoring class. Any Plaintiffs who do not want any type of monitoring, however, can simply refuse to receive it.

9. After a period of discovery, the parties may propose the appropriate subclasses to the Court pursuant to Rule 23(c)(4). The Court, however, expects all future briefs to be much more concise than they were in this instance.

10. The Court has incorporated the Plaintiffs' proposed class definition, as supplemented, but has eliminated the reference to spouses because we find that loss of consortium is not an appropriate issue for class treatment at this time.