Margaret HALEY, Plaintiff,

v.

MEDTRONIC, INC., Defendant.

No. 94–4113 WJR (GHKx).

United States District Court, C.D. California.

Dec. 12, 1996.

Milberg Weiss Bershad Hynes & Lerach, William S. Lerach, Allan M. Mansfield, Frank J. Janecek, Jr., Sheri Pym, Timothy G. Blood, San Diego, CA, Ernst & Mattison, Don A. Ernst, Raymond E. Mattison, Patricia Gomes, San Luis Obispo, CA, Higgs, Fletcher & Mack, San Diego, CA, The Cuneo Law Group, Jonathan W. Cuneo, Washington, DC, for plaintiffs.

Lewis, D'Amato, Brisbois & Bisgaard, Roy M. Brisbois, Los Angeles, CA, for defendant, Medtronic, Inc.

## OPINION AND ORDER RE: PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

REA, District Judge.

The Motion of plaintiff Margaret Haley for class certification came on regularly for a hearing September 16, 1996, before the Court, the Honorable William J. Rea, United States District Judge, presiding. Having considered the above motion, the papers filed in support thereof and in opposition thereto, the oral argument of counsel, and the files in the case, the Court hereby orders that:

Plaintiff's motion for class certification is denied since class action treatment would not be a superior method of adjudicating these claims.

In accordance with its order, the Court finds and rules as follows:

### A. Class Actions in General

█ Class actions have two primary purposes: (1) to accomplish judicial economy by avoiding multiple suits; and (2) to protect the rights of persons who might not be able to present claims on an individual basis. *See, e.g., Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983).

█ As the party seeking class certification, the burden is on plaintiff to establish a prima facie showing of each of the prerequisites of Rule 23(a) of the Federal Rules of Civil Procedure *and* to establish an appropriate ground for class action under FRCP 23(b). *See, e.g., Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.1992); *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir.1975). Plaintiff can meet this burden by providing the Court with a sufficient basis for forming a "reasonable judgment" on each requirement. *See, e.g.; Blackie*, 524 F.2d at 901.

█ In determining whether to grant class certification, the Court's main concern is whether Rule 23's requirements are met and, particularly, whether the class action device is a fair and efficient method for litigating the particular controversy. In addition, it is clear that plaintiff is not required to prove the merits of the class claim on a motion for certification, or even to establish a probability that the action will be successful. *See, e.g., Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152–53, 40 L.Ed.2d 732 (1974); *Valentino v. Carter–Wallace, Inc.*, 97 F.3d 1227, 1231–32 (9th Cir.1996); *Blackie* 524 F.2d at 901. However, courts are not likely to allow a class action if convinced that there is no realistic chance of success. *Orlett v. Cincinnati Microwave, Inc.*, 953 F.2d 224, 228 (6th Cir. 1990).

### B. FRCP 23(a)'s Requirements

FRCP 23(a) establishes four prerequisites to class action lawsuits that must be met for a court to grant a motion for class certification.

#### 1. *Numerosity*

█ FRCP 23(a)(1) provides that a class action is proper if, "The class is so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). The courts have made clear that plaintiff does not need to show that it would be impossible to join every class member, as "impracticability" does not mean "impossibility." *See, e.g., Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909 (9th Cir.1964). Because no exact numerical cut-off exists, the specific facts of each case must be examined to determine if impracticability exists. *See, e.g., General Tel. Co. v.*

*EEOC,* 446 U.S. 318, 330, 100 S.Ct. 1698, 1706, 64 L.Ed.2d 319 (1980).

In assessing whether the numerosity standard is met, the Court will consider the following factors: "the geographical diversity of class members, the ability of individual claimants to institute separate suits, and whether injunctive or declaratory relief is sought." *See Jordan v. Los Angeles,* 669 F.2d 1311, 1319 (9th Cir.), *vac. on other grounds,* 459 U.S. 810, 103 S.Ct. 35, 74 L.Ed.2d 48 (1982). In addition, it is clear that a conclusory allegation that joinder is impracticable is insufficient. *See, e.g., Vergara v. Hampton,* 581 F.2d 1281, 1284 (7th Cir.1978).

Applying this standard to the facts of the present case, it seems clear that the numerosity requirement is satisfied. Approximately 66,166 of the defective leads have been implanted and over 43,000 of these leads are still active. Moreover, these leads have been implanted across the United States such that potential plaintiffs are spread out and are not in one confined geographical area. In addition, because defendant is required to maintain records on all people implanted with these leads, the identity of potential plaintiffs is easily ascertainable such that an identifiable class does exist. *See, e.g., Bailey v. Patterson,* 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962) (holding that class certification should not be granted where there is not an ascertainable and identifiable class).

Furthermore, though a court may not presume from plaintiff's injury that others in the class have also suffered injury, *see, e.g., General Tel. Co. v. Falcon,* 457 U.S. 147, 157–58, 102 S.Ct. 2364, 2370–71, 72 L.Ed.2d 740 (1982), in the instant case, there are so many potential claimants and so many potential injuries that joinder is in fact impracticable. In addition, because plaintiff alleges that defendant committed fraud with respect to concealment of the failure rate of the leads, all recipients of the leads have suffered this same "injury"—even if they did not suffer any physical harm from the devices.

Plaintiff and defendant agree that there are about twenty-five lawsuits currently pending against defendant across the country with regard to the specific leads in question. Given the vast number of people who have had the leads implanted, it is likely that the number of lawsuits that will be filed in the near future is likely to increase substantially. In light of these considerations, the Court finds that the numerosity requirement is satisfied.

### 2. *Commonality*

FRCP 23(a)(2) provides that a class action is appropriate only if "there are questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). In other words, to justify class action treatment, there must be some issue involved "common to the class as a whole," and relief must "turn on questions of law applicable in the same manner to each member of the class." *See General Tel. Co. v. Falcon,* 457 U.S. 147, 155, 102 S.Ct. 2364, 2369, 72 L.Ed.2d 740 (1982). Thus, class certification is proper only where the common issues of fact or law are of sufficient importance to the case that the Court is convinced that the most efficient method of determining the rights of the parties is through a class action. *See, e.g., Califano v. Yamasaki,* 442 U.S. 682, 701, 99 S.Ct. 2545, 2557–58, 61 L.Ed.2d 176 (1979).

In the instant case, where the underlying defect in the leads is all related to the same defective material in the leads—regardless of the particular individual in whom the lead is implanted—it appears that commonality is present. Indeed, for the commonality requirement to be met, there must only be one single issue common to the proposed class. *See, e.g., In re Telectronics Pacing Systems, Inc.,* 164 F.R.D. 222, 228 (S.D.Ohio 1995). This standard clearly seems satisfied by this common fact alone.

In addition, in mass tort cases like the present where a single product is involved, the requirement of commonality is satisfied by a showing of a common question of defendant's conduct with regard to liability. *See id.* In the instant case, where defendant's representations and misrepresentations to the FDA and to the public are all the same, there clearly appears to be an issue of

commonality. Furthermore, as plaintiff's motion made clear, the defendant's potential liability revolves around several common questions, including the design and manufacture of the leads and the amount of testing performed by defendant.

■ Although commonality may be found lacking where a common fact issue would be resolved differently under different state laws applicable to the facts of the case, *see, e.g., In re Northern District of Cal., Dalkon Shield, Etc.,* 693 F.2d 847, 850 (9th Cir.1982), a sufficient number of common issues are present in the instant case to satisfy the commonality requirement.

■ It should also be noted that in suits seeking joint relief—e.g., injunctions—commonality usually exists by its very nature, unless the injunction sought turns on individual circumstances. *See, e.g., Stott v. Haworth,* 916 F.2d 134, 143–45 (4th Cir.1990). In the instant case, the medical treatment program would seem to fall in the former situation, as the medical monitoring program would not be based on individual circumstances.

### 3. *Typicality*

■ FRCP 23(a)(3) states that a class action is proper only where "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). To see if typicality exists, the Court does not need to find that the claims of the purported class representative are identical to the claims of the other class members. *See, e.g., General Tel. Co. v. Falcon,* 457 U.S. 147, 155, 102 S.Ct. 2364, 2369, 72 L.Ed.2d 740 (1982); *Weinberger v. Jackson,* 102 F.R.D. 839, 844 (N.D.Cal.1984) (holding that the typicality requirement should be loosely construed). Instead, the test is that the class representative "must be part of the class and possess the same interest and suffer the same injury as the class members." *Id.; CRLA v. Legal Services Corp.,* 917 F.2d 1171, 1175 (9th Cir.1990). In other words, a claim is typical if it: (1) arises from the same event or practice or course of conduct that gives rise to the claims of other class members; and (2) is based on the same

legal theory as their claims. *See Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir.1992).

■ In the instant case, defendant's "course of conduct" with respect to the various plaintiffs—i.e., its design, manufacture and sale of the leads—was exactly the same. In addition, plaintiff's claim is also based on the same basic legal theory as the other class members—defendant's design, manufacture and testing of the leads was improper, negligent and resulted in harm to the recipients. Thus, it would seem that plaintiff's claim is "typical" of those of the rest of the class.

■ In addition, it is clear that—notwithstanding defendant's arguments—it is not necessary that all class members suffer the same exact injury as the class representative. *See, e.g., Rosario,* 963 F.2d at 1018. Indeed, the named plaintiff's claim may be "typical" even if other members of the class suffered lesser injuries. *Id.* Even more importantly, plaintiff's claim can still be typical even if the class members' injuries were suffered at different times. *See, e.g., Alfus v. Pyramid Technology Corp.,* 764 F.Supp. 598, 606 (N.D.Cal.1991). On the other hand, class action is not appropriate where a different "type" of injury was suffered. *See, e.g., Sanna v. Delta Airlines,* 132 F.R.D. 47 (N.D.Ohio 1990).

In the instant case, plaintiff's injury from the defective leads—while potentially different in scope or timing from the other class members' injuries—is the same type of injury that the other class members have suffered or will suffer. Therefore, the different damages based on the individual characteristics of the recipients does not render plaintiff's claim atypical. Instead, the Court rules that plaintiff has met the typicality requirement.

### 4. *Adequacy of Representation*

■ FRCP 23(a)(4) provides that the final prerequisite to a class action is that "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). According to the Ninth Circuit, representation is "adequate" if: (1) the attorney representing the class is qualified and competent; and (2) the class

representatives do not have interests antagonistic to the remainder of the class. *See Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir.1978); *In re Northern Dist. of Cal., Dalkon Shield, Etc.*, 693 F.2d 847, 855 (9th Cir.1982).

To see if the attorney representing the class is qualified, the Court will look to the professional qualifications, skills, experience and resources of the lawyers. *See, e.g., North American Acceptance Corp. v. Arnall, Golden & Gregory*, 593 F.2d 642 (5th Cir.1979). As the extensive firm resumes of plaintiff's lawyers make clear, plaintiff's lawyers clearly seem to meet this standard. In addition, plaintiff's lawyers do not possess any conflicts of interest that might hamper their ability to adequately represent the class.

To see if the named plaintiff will adequately represent the class, the Court focuses on whether the representative's individual interests are the same or similar to those of the other class members—i.e., much like was done with respect to typicality. *See, e.g., General Tel. Co. v. Falcon*, 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). If so, it is likely that the representation will be adequate for purposes of Rule 23(a)(4).

In the instant case, plaintiff's adequate representation of the class is also guaranteed by the fact that plaintiff's interest is clearly large enough—i.e., she has enough at stake—to ensure a vigorous prosecution of the action. Furthermore, as far as can be seen, the named plaintiff here is not subject to any unique defenses not assertable against the other class members. *See, e.g., Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.1992). Finally, there do not appear to be any conflicts between the class members that are either serious or irreconcilable enough to defeat the adequacy of representation. *See, e.g., Sosna v. Iowa*, 419 U.S. 393, 403, 95 S.Ct. 553, 559, 42 L.Ed.2d 532 (1975).

## C. FRCP 23(b)(3)

The Court can only grant class certification to plaintiffs if, as FRCP 23(b)(3) provides, "The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).

Although the question of whether common issues predominate over individual issues and the question of whether a class action would be superior are interconnected inquiries, the Court will follow the traditional approach of addressing each of these issues independently. *See, e.g., Valentino v. Carter–Wallace, Inc.*, 97 F.3d 1227, 1234–35 (9th Cir.1996); *In re Northern Dist. of Cal., Dalkon Shield, Etc.*, 693 F.2d 847, 856 (9th Cir.1982).

### 1. *Predominates*

Although the Court has already found that common questions of law and fact exist in the instant action, the Court must now go one step further and find that such common questions "predominate" the action, or else class certification is inappropriate. Commenting on this requirement, the Ninth Circuit recently noted that, "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." *Valentino*, 97 F.3d at 1234. In other words, in order to determine if common issues of fact and law "predominate," the Court will have to decide whether there are so many questions common to all of the plaintiffs that having class action treatment would be far more efficient than having a number of separate trials.

In arguing that common issues do not predominate in this matter, defendant focused on the fact that with implantable medical devices, individual questions for each plaintiff will be critical since each plaintiff's body will respond differently to the implanted leads. Defendant's argument, while critical to the Court's later analysis of whether class action treatment is "superior," (*see* next section), is not as essential for assessing whether common questions predominate. This is because defendant's argument ignores the fact that plaintiffs' claims actually focus on defendant's liability and defendant's conduct with regard to the leads—not on their effect on the plaintiffs. Thus, because defendant's conduct

with regard to the leads—and, hence, with regard to the plaintiffs themselves—involves questions of common fact primarily, the Court finds that this factor alone does not destroy the predominance of the common questions.

Defendant also emphasized that because plaintiffs' claims revolve around defendant's alleged fraudulent misrepresentations, plaintiffs will have to prove individual reliance on these misrepresentations, making such individual questions more important than the common questions. Defendant is correct that individual issues will need to be considered by the Court in determining whether plaintiffs have a valid claim for fraudulent misrepresentation. As will shortly be made clear, however, this situation is more important to the Court's "superiority" analysis, and the Court is not convinced by this factor alone that common questions do not predominate. Indeed, because both misrepresentations and omissions were made in the instant circumstances, the Court finds that such individual reliance issues do not independently destroy the predominance of the common questions inherent in this action. *See, e.g., Weinberger v. Jackson*, 102 F.R.D. at 846 (holding that individual questions of reliance do not predominate in a 10(b)(5) securities fraud action, where reliance is an element of the prima facie case, since there are both misrepresentations and omissions).

█ As for the issue of damages, it seems clear that the fact that plaintiffs will be entitled to different damages does not mean that common questions do not predominate. *See, e.g., Sterling v. Velsicol Chemical Corp.*, 855 F.2d 1188, 1196–97 (6th Cir.1988) (holding that "no matter how individualized the issue of damages may be ... the mere fact that questions peculiar to each member of the class remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible"). Indeed, the fact that each class member is seeking separate damages, or even that each claim arose out of a separate transaction with defendant, is not necessarily fatal to class action treatment as long as "common questions of law or fact" running through each claim predomi-

nate. *See, e.g., Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir.1975). Thus, because the Court believes that defendant's conduct with regard to the design, manufacture and distribution of the leads and defendant's representations about these leads are at the heart of all plaintiffs' cases, the Court feels that common questions of law and fact do predominate in the instant case.

As a final observation, it is important to note that the Ninth Circuit's holding in *In re Northern Dist. of Cal., Dalkon Shield, Etc.*, 693 F.2d 847, 854 (9th Cir.1982), rejecting a nationwide class certification in the products liability context does not compel the finding that common questions do not predominate in the instant case. First, that case was extremely unusual—and entirely different from the instant case—in that there was no plaintiff or plaintiff's counsel ready, willing and able to represent the class. *See Valentino*, 97 F.3d at 1231–32. In addition, the *Dalkon Shield* court was strongly influenced by the fact that that case involved multiple defendants and multiple marketing schemes. In the instant case, where there is only one defendant and, therefore, only one marketing scheme at issue, the potential individual issues are much less troublesome. As a result, despite the Ninth Circuit's decision in *Dalkon Shield*, the common questions in the instant litigation do still predominate. *See Valentino*, 97 F.3d at 1231 (holding that, "Although Dalkon Shield pointed out many of the problems common to products liability litigation in meeting Rule 23's class certification requirements, we cannot conclude that Dalkon Shield creates an absolute bar to such certification in this circuit").

### 2. *Superiority of Class Action Treatment*

█ Having concluded that common questions of law and fact predominate in the instant litigation, the crucial issue for the Court is whether a class action would be superior in the instant case where defective pacemaker leads were implanted in plaintiffs.

█ At the outset, it must be noted that although the Court's analysis of the predominance issue is closely related to whether or not class action treatment is "superior," it is not at all inconsistent or contradictory for

the Court to now find a class action to not be superior. In other words, while common questions of law and fact might predominate a given litigation, it is quite possible that so many individual issues might also exist that class action treatment would not be appropriate. Thus, even if seventy-five percent of the issues are common questions—assuming seventy-five percent is enough to establish "predominance"—if the other twenty-five percent that are individual in nature are significant enough, class action treatment might not be "superior" after all.

Plaintiff and defendant both cite a number of cases suggesting—according to whomever the source may be—that a class action is appropriate—or not appropriate—in a mass tort, products liability context. *Compare, In re Copley Pharmaceutical,* 158 F.R.D. 485 (D.Wyo.1994) (granting class certification in a products liability action against the manufacturer of a prescription drug), *with, In re Northern Dist. of Cal., Dalkon Shield, Etc.,* 693 F.2d 847 (9th Cir.1982) (overturning the district court's certification of a nationwide class in a products liability case).

Traditionally, courts have been reluctant to certify class actions in mass tort, product liability litigation. Indeed, as the Advisory Committee Note to the 1966 Revision of Rule 23(b)(3) states:

A 'mass accident' resulting in injuries to numerous persons is ordinarily not appropriate for a class action because of the likelihood that significant questions, not only of damages but of liability and defenses to liability, would be present, affecting the individuals in different ways. In these circumstances an action conducted nominally as a class action would degenerate in practice into multiple lawsuits separately tried.

Proceeding based on similar beliefs, most courts have found that product liability cases typically present issues of liability and damages that are highly individual and therefore rarely qualify under the requirements of Rule 23(a) and (b). *See, e.g., Matter of Rhone–Poulenc Rorer, Inc.,* 51 F.3d 1293, 1297 (7th Cir.1995). As the Ninth Circuit expressly noted in its recent decision in *Valentino v. Carter–Wallace, Inc.,* 97 F.3d 1227, 1229–31 (9th Cir.1996), however, in determining whether to certify a class, the Court should proceed on a case-by-case basis to consider the appropriateness of class action treatment under the particular circumstances presented. *Id.; see also,* 3 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions,* § 17.05 (3d ed.1992) (noting that modern courts are increasingly looking to class actions to manage large-scale, mass tort litigations).

In determining whether a class action is superior, courts will consider four factors under Rule 23(b)(3).

### A. *FRCP 23(b)(3)(A)*

The first factor to consider is the interest of each member in "individually controlling the prosecution or defense of separate actions." Fed.R.Civ.P. 23(b)(3)(A). This factor is most relevant where each class member has suffered sizeable damages or has an emotional stake in the litigation. *See, e.g., In re Northern Dist. of Cal., Dalkon Shield, Etc.,* 693 F.2d 847, 856 (9th Cir.1982). In the instant case, where the damages each plaintiff suffered are not that great, this factor weighs in favor of certifying a class action. While the damages present here are clearly of emotional import, because the amount sought—or so plaintiff claims—is so small in many of the cases, there appears to be no special desire to maintain individual actions.

### B. *FRCP 23(b)(3)(B)*

The second factor that the Court looks to is "the extent and nature of any litigation concerning the controversy already commenced by or against members of the class." Fed.R.Civ.P. 23(b)(3)(B). In the instant case, there are currently twenty-five other pending lawsuits. Because all of these lawsuits involve the same basic theories and claims of liability, it seems probable that the Court will indeed be able to enjoin these other cases if the plaintiffs do not opt out of the class. Thus, because the Court will probably not encounter a problem in terms of not being able to enjoin other litigation, this factor also slightly weighs in favor of granting class certification.

## C. FRCP 23(b)(3)(C)

The third factor to consider is "the desirability or undesirability of concentrating the litigation of the claims in the particular forum." Fed.R.Civ.P. 23(b)(3)(C). In this case, where the potential plaintiffs are located across the country and where the witnesses and the particular evidence will also be found across the country, plaintiffs have failed to establish any particular reason why it would be especially efficient for this Court to hear such a massive class action lawsuit. Indeed, plaintiffs have not even· established that the vast majority of the individual lawsuits that have been filed—or that will be filed—should be brought in the Central District of California. Absent such evidence, it seems clear that this factor indicates that class action treatment is inappropriate in the instant circumstances. *See, e.g., In re Northern Dist. of Cal., Dalkon Shield, Etc.,* 693 F.2d at 856 (holding that class certification was inappropriate before a district court in the Northern District of California since the majority of California Dalkon Shield cases were not filed in the Northern District of California).

## D. FRCP 23(b)(3)(D)

The fourth and final factor to be considered is "the difficulties likely to be encountered in the management of a class action." Fed.R.Civ.P. 23(b)(3)(D). The Supreme Court has described the manageability issue as "encompass[ing] the whole range of practical problems that may render the class format inappropriate for a particular suit." *Eisen,* 417 U.S. at 164, 94 S.Ct. at 2146. It is because of this factor in particular that the Court feels class certification is inappropriate. First, the larger the class, the more costly and difficult it will be to provide adequate notice, to determine individual damage claims, and to distribute any recovery. *See, e.g., Six Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301, 1304 (9th Cir.1990).

In addition, because plaintiffs' claims are all state law claims, class action treatment would present the Court with the particularly "unmanageable" task of having to apply so many different state laws. Although plaintiff contends that this hurdle is not a major problem in the instant case since state laws on negligence and fraud are likely to be quite similar, the problems and complexities raised by having to consider so many different state laws—even if they are relatively the same— convince the Court that class certification would be inappropriate in the instant litigation. *See, e.g., In re American Medical Systems,* 75 F.3d 1069, 1084–85 (6th Cir.1996). In addition, no matter how similar—or comparable—each state's law on negligence may be, it is clear—despite plaintiffs' argument— that the negligence laws of the fifty states have some differences. *See, e.g., In re Rhone–Poulenc Rorer, Inc.,* 51 F.3d 1293, 1300–02 (7th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 184, 133 L.Ed.2d 122 (1995) (finding that class certification was inappropriate in that products liability lawsuit since it would have required a jury to determine the negligence of the defendants under a "hypothetical" negligence standard that the district court had created to avoid the problem posed by the fact that the fifty states' negligence laws are not identical). As a result, the Court would be forced to go through—and to have the jury go through— an individual analysis of each state's negligence law in order to determine defendant's liability for negligence with regard to each individual defendant. As the Sixth Circuit recently held, "If more than a few of the laws of the fifty states differ, the district judge would face an impossible task instructing the jury on relevant law." *Id.* at 1089; *see also, Harding v. Tambrands, Inc.,* 165 F.R.D. 623, 632 (D.Kan.1996) (noting that "instructing the jury in a manner that is both legally sound and understandable to a jury of lay persons would be a herculean task"). In other words, the complexities that class action treatment would create would more than outweigh any benefits from considering the common issues in one trial, making class action treatment less efficient and definitely not "superior."

Furthermore, with this nationwide class, any measurements of compensatory and punitive damages would need to be measured individually, based on the individual circumstances and individual state laws. Indeed, it is beyond dispute—and plaintiffs have wisely

not made this argument—that the laws of the fifty states regarding compensatory and punitive damages contain numerous differences that would require the Court to individually analyze each of plaintiffs' claims to determine appropriate damages. *See, e.g., In re Northern Dist. of Cal., Dalkon Shield,* 693 F.2d 847, 850 (9th Cir.1982) (holding that the fifty states do not apply the same punitive damages standards); *Castano v. American Tobacco Co.,* 84 F.3d 734, 743 n. 15 (5th Cir. 1996) (noting that differences exist in state laws regarding products liability, fraud and punitive damages). Having the Court conduct this massive and particularized investigation and analysis is not in the best interests of judicial efficiency. *See, e.g., In re Copley,* 158 F.R.D. at 492 (conceding that class certification is not the most efficient adjudicative approach where individual facts and individual state laws will need to be assessed).

Thus, the number of individual issues existing in this case hampers the "manageability" of a class action. *See, e.g., In re Northern Dist. of Cal., Dalkon Shield,* 693 F.2d at 856 (noting that, "Management is made difficult by the complexity and multiplicity of issues ..."); *Kurczi v. Eli Lilly & Co.,* 160 F.R.D. 667, 681 (N.D.Ohio 1995) (denying certification of a class for, among other things, manageability problems created by the necessity for an individual hearing for each plaintiff regarding choice of law, another individual hearing regarding causation, and still another one regarding damages); *Reichert v. Bio–Medicus, Inc.,* 70 F.R.D. 71 (D.Ct. MN 1974).

In the instant case, where the class is so large—potentially 66,000 plaintiffs according to the plaintiff's own papers—issues of manageability persuade the Court to deny plaintiff's motion. This is especially the case due to the vast number of individual issues existing with regard to whether all of the plaintiffs actually relied to their detriment on defendant's misrepresentations, with regard to how and to what extent each plaintiff was injured, and with regard to the appropriate damages. Given all of these extremely complicated and individual issues, it would seem unwise—and unmanageable—for the Court

to independently attempt to handle this case. *See, e.g., In re Northern Dist. of Cal., Dalkon Shield,* 693 F.2d at 856.

Indeed, the Ninth Circuit has held that where each class member would have to litigate numerous and substantial separate issues to establish his or her right to recover individually—after liability to the class is established—a class action is not "superior." *See, e.g., In re Northern Dist. of Cal., Dalkon Shield, Etc.,* 693 F.2d 847, 856 (9th Cir.1982); *Walsh v. Ford Motor Co.,* 807 F.2d 1000, 1017 (D.C.Cir.1986) (holding that class actions arising under state laws with multistate plaintiffs may be unmanageable due to variations in state laws and defenses and problems in effecting discovery).

Although the Court has already found that common questions predominate over any individual issues in this litigation, this finding does not foreclose the Court from now ruling that a class action is inappropriate due to manageability concerns. Indeed, while the Court believes that there is a common nucleus of facts in the instant case stemming from defendant's conduct—specifically, defendant's design, manufacture and distribution of the pacemaker leads and its representations regarding their safety—sufficient to predominate the entire litigation, the Court can still determine that so many individual questions exist as to make class action treatment unmanageable.

This situation appears, once again, to be the case in this litigation. Here, the allegedly negligent pacemaker leads were implanted in different individuals in different states by different doctors. As a result, the causes of plaintiffs' injuries are not entirely the same, since the injuries did not occur at the same time, place or under the same conditions. Given the fact that approximately 66,000 individuals had these leads implanted, there are potentially 66,000 different instances that the Court would have to examine to determine if defendant's conduct was the real cause of injury for each potential plaintiff. Under these circumstances, there are just too many individual issues for the Court to manage for class adjudication to be deemed superior, even though there is a common nucleus of facts concerning defendant's conduct. *See,*

*e.g., In re Northern Dist. of Cal., Dalkon Shield, Etc.,* 693 F.2d 847, 853 (9th Cir.1982) (noting that in products liability actions, individual issues may outnumber common issues where "no one set of operative facts establishes liability"); *In re Fibreboard,* 893 F.2d 706 (5th Cir.1990); *but see, In re A.H. Robins Co., Inc.,* 880 F.2d 709 (4th Cir.1989) (upholding certification of product liability claims against insurer of Dalkon shield manufacturer). Thus, as the Sixth Circuit recently concluded, "In this situation [where a number of individual issues existed], the economies of scale achieved by class treatment are more than offset by the individualization of numerous issues relevant only to a particular plaintiff." *In re American Medical Systems, Inc.,* 75 F.3d 1069, 1085 (6th Cir.1996).

Having come to this conclusion, the Court must note that this view is not inconsistent with the Ninth Circuit's recent holding in *Valentino v. Carter–Wallace, Inc.,* 97 F.3d 1227, 1229–31 (9th Cir.1996). In *Valentino,* the Ninth Circuit made clear that, "[T]he law of this circuit, and more specifically our leading decision in Dalkon Shield, does not create any absolute bar to the certification of a multi-state plaintiff class action in the medical products liability context." *Id.* at 1230. Although the parties did not have the opportunity to discuss the effect of *Valentino* on the instant case at the hearing, it seems clear to the Court that the Court's holding that class action treatment would be inappropriate under the instant circumstances is wholly consistent with the Ninth Circuit's opinion in *Valentino.*

In ruling that class action lawsuits are not automatically barred in the products liability context, the *Valentino* court focused on two products liability cases where other circuits had approved class certifications—the "Agent Orange" litigation in the Second Circuit and the "School Asbestos" litigation in the Third Circuit. *See In re Agent Orange Prod. Liab. Litig.,* 818 F.2d 145 (2nd Cir. 1987), *cert. denied,* 484 U.S. 1004, 108 S.Ct. 695, 98 L.Ed.2d 648 (1988); *In re School Asbestos Litig.,* 789 F.2d 996 (3rd Cir.), *cert. denied,* 479 U.S. 852, 107 S.Ct. 182, 93 L.Ed.2d 117, and *cert. denied,* 479 U.S. 915,

107 S.Ct. 318, 93 L.Ed.2d 291 (1986). Following the reasoning in the *Valentino* opinion, these two cases appear to be readily distinguishable from the instant case.

As *Valentino* notes, the reason class certification was appropriate in *Agent Orange* is that the "military contractor defense" was central to the entire litigation. *See Valentino,* 97 F.3d at 1231–32. This defense was common to all of the plaintiffs' cases, so as a result, common issues predominated that case. In addition, the military contractor defense rendered class action treatment superior to any other form of adjudication since that defense was potentially dispositive for the entirety of all the cases. *Id.*

In the instant case, there is no similar single issue common to all of the plaintiffs that would render class action treatment superior. Although defendant's alleged misrepresentations are common to all of plaintiffs' cases, a finding by one federal court on whether or not defendant made these misrepresentations would not dispose of the entire case like the "military contractor defense" could do in *Agent Orange.* Specifically, even if the Court found that defendant had not made any misrepresentations, the Court would still need to consider all of plaintiffs' other claims, including their negligence claims, that would involve the disposition of so many individual issues. And even if the Court found that the misrepresentations had been made, the Court would still have to assess the individual issues of reliance and resulting damage merely to dispose of plaintiffs' fraudulent misrepresentation claims. Thus, unlike *Agent Orange,* the instant case does not seem appropriate for class action treatment.

The *School Asbestos* litigation also does not suggest that the instant products liability case should be treated as a class action. As *Valentino* explained, class certification was appropriate in *School Asbestos* because the plaintiffs were seeking compensation for property damages instead of for personal injuries. *Valentino,* 97 F.3d at 1231–32. In the instant case, where compensation is sought for personal injuries, not property damages, class treatment would be unmanageable, and would clearly not be "superior."

Specifically, as the *School Asbestos* opinion made clear, while the effect of asbestos on different buildings will be the same, the effect of asbestos—or pacemaker leads—on different human beings will not be the same. *See School Asbestos,* 789 F.2d at 1010–11. Thus, the Court would have to analyze the effect of the allegedly injurious product—the leads—on each of the individual plaintiffs in a class action lawsuit—the prospect of which seems entirely and overwhelmingly unmanageable.

 The Court does have the option—like several other courts have done—to uphold certification under Rule 23(c)(4)(A) as to particular liability issues. *See, e.g., In re Telectronics Pacing Systems, Inc.,* 164 F.R.D. 222, 230 (S.D.Ohio 1995); *In re Copley Pharmaceutical, Inc.,* 161 F.R.D. 456, 465–466 (D.Wyo.1995); *Jenkins v. Raymark Industries,* 782 F.2d 468, 473 (5th Cir.1986); *In re School Asbestos Litig.,* 789 F.2d 996, 1011 (3rd Cir.1986). Such an approach—while preferable to certifying the entire case as a class action—would still require the Court to overcome numerous complexities raised by having to apply so many different state laws and by the individual issues regarding liability for fraud and misrepresentation. Indeed, an approach such as the one manufactured by the district court in *In re Telectronics Pacing Systems, Inc.,* 164 F.R.D. 222, 230 (S.D.Ohio 1995), whereby subclasses of plaintiffs are created and only certain elements of some causes of actions are heard, seems inherently complicated and incredibly inefficient. As a result, such partial certification also does not seem appropriate in the current situation.

As a final note, it seems particularly unwise for the Court to certify a class action where fraud is one of the principal claims set forth by plaintiffs. Because proving fraud requires plaintiffs to show that the misrepresentations to each class member were the same or substantially similar, *see, e.g., In re American Continental Corp./Lincoln Sav. & Loan Sec. Litig.,* 140 F.R.D. 425, 427 (D.Az. 1992), this impliedly would require the Court to hear from every single plaintiff and physician as to the representations they individually relied upon. This is because variations in the defendant's misrepresentations may actually preclude class treatment in certain situations. *See Crasto v. Estate of Kaskel,* 63 F.R.D. 18 (S.D.N.Y.1974). In addition, allegations of fraud usually raise state of mind and credibility issues and usually require that each claim be considered separately, suggesting the inappropriateness of class treatment for such issues. *See, e.g., Simer v. Rios,* 661 F.2d 655, 673–74 (7th Cir.1981).

Having reached the conclusion that class action treatment is inappropriate in the instant circumstances for the forgoing reasons, the Court feels it essential to note that while plaintiffs emphasize that many potential plaintiffs will not be able to bring individual lawsuits against defendant because they have not suffered serious enough injuries and will therefore not have enough incentive to bring a costly individual lawsuit, the Court is not foreclosing or precluding such plaintiffs from filing class action lawsuits in their individual states with other same-state plaintiffs. In other words, nothing that the Court is holding today should be deemed as indicating the Court's opinion with regard to a more geographically-limited class action suit in which the laws to be applied are all the same. Thus, despite plaintiffs' protestations, those plaintiffs who will not be able to recover for their injuries unless the Court certifies a class will still be able to pursue adequate and effective judicial remedies by bringing a more limited—and thus more efficient—class action lawsuit.

**D. The Medical Monitoring Program**

FRCP 23(b)(2) provides that a class action is appropriate if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2).

 It is clear that this does not mean that every single class member must have been injured or aggrieved in the same way by defendant's conduct. Instead, it is sufficient if the defendant has adopted a pattern of activity that is likely to be the same as to all members of the class. *See, e.g.,*

*Christman v. American Cyanamid Co.,* 92 F.R.D. 441, 453 (N.D.W.Va.1981). In the instant situation, such class treatment seems appropriate since the plaintiffs have all been dealt with in identical manners by defendant. However, because class certification is inappropriate for plaintiffs' principal claims, class treatment here would be misplaced and unmanageable.

 In addition, and more importantly, Rule 23(b)(2) treatment is clearly unavailable where the principal relief sought is money damages. *See, e.g., Nelsen v. King County,* 895 F.2d 1248, 1254 (9th Cir.1990). Although plaintiffs claim that this request for a medical monitoring program is not merely incidental to their action for monetary damages, it seems clear that the primary goal of plaintiffs is in fact monetary damages. *See, e.g., In re Copley Pharmaceutical, Inc.,* 158 F.R.D. 485, 490–91 (D.Wyo.1994) (holding that the medical monitoring program sought by the plaintiffs was incidental next to the money damages sought); *but see, In re Telectronics Pacing Systems, Inc.,* 164 F.R.D. 222, 229 (S.D.Ohio 1995) (holding that the plaintiffs' request for a medical monitoring program to see whether pacemaker wire leads were defective was not secondary to claims for money damages). Indeed, this action was not brought with the purpose of identifying whether the leads in question were defective or not, like the court in *Telectronics* assumed before holding that a medical treatment program was not incidental to the money damages claims. *See Telectronics,* 164 F.R.D. at 229. Here, plaintiffs base their claims on the allegation that defendant knew the leads were faulty and defective and still sold them to the public. In such a situation, it seems clear that the plaintiffs' main concern is not to discover whether the leads that have been implanted are defective—they allege that all the leads are defective—but to recover from defendant for selling these defective leads.

Moreover, class certification under Rule 23(b)(2) is clearly only appropriate where the primary relief sought is declaratory or injunctive. *See Kurczi v. Eli Lilly & Co.,* 160 F.R.D. 667, 673 (N.D.Ohio 1995). Under the facts of the instant case, therefore, even if the medical monitoring program is not "incidental" to plaintiffs' action, it is definitely not the "primary" relief either.

As a result, certifying a class under Rule 23(b)(2) where the declaratory relief sought is secondary to larger claims for monetary damages would be contrary to the purposes of Rule 23(b)(2). *See, e.g., In re Copley,* 158 F.R.D. at 491 (holding that the plaintiffs' request for a declaratory judgment ordering the defendant to perform medical monitoring and treatment of the plaintiffs was barred by Rule 23(b)(2) where the primary claim is for money damages); *In re Asbestos Sch. Litig.,* 104 F.R.D. 422 (E.D.Pa.1984). If the Court does later determine or find that plaintiffs' request for a medical monitoring program is in fact not incidental to their money damages claims, then the Court may at that time grant certification for injunctive relief under Rule 23(c)(1). *See, e.g., In re Copley,* 158 F.R.D. at 491. Thus, at this time, it seems wise for the Court to deny class certification here also.

IT IS SO ORDERED.